**Andrew L. MANNINGS, a minor, by his father and next friend, Willie M. Mannings, et al., Plaintiffs,**

v.

**The BOARD OF PUBLIC INSTRUCTION OF HILLSBOROUGH COUNTY, FLORIDA, et al., Defendants.**

Civ. T. No. 3554.

United States District Court
M. D. Florida,
Tampa Division.

Aug. 18, 1969.

Drew S. Day, New York, N. Y., and James B. Sanderlin, St. Petersburg, Fla., for plaintiff.

John M. Allison, Tampa, Fla., for defendant.

FINAL ORDER

LIEB, Chief Judge.

On December 12, 1968, plaintiffs filed herein a Motion for Further Relief, contending that the plan of operation then in use by the defendant Board was not functioning as required by decisions of the Supreme Court of the United States and the Fifth Circuit Court of Appeals. The motion alleged that the operation of the defendant's schools had not resulted in a dismantling of the old dual system of white and Negro schools and that some other method of doing so should be provided by the defendant. After hearing on the motion, the Court, on March 5, 1969, ordered the defendant Board to formulate and adopt a comprehensive plan which would effectuate a transition to a racially non-discriminatory school system in Hillsborough County.

Pursuant to this Court's Order of March 5, 1969, the defendant Board submitted a revised plan on April 15, 1969, which plan was considered and rejected by this Court by Order of May 9, 1969, as an inadequate compliance with the Court's previous order. At the same time, the Court ordered the defendant Board to file an amended plan on or before May 23, 1969, and the defendant Board did submit a new plan on that

date. Objections were filed by plaintiffs to this amended plan and, after hearings, a further amendment was proposed by defendant Board on July 3, 1969, which was rejected by the Court because much of the plan was based upon the privilege of "freedom of choice" of schools by students, which the Court felt would not help to abolish the dual system. On July 25, 1969, the Court ordered the defendant Board to file still another complete comprehensive plan which would include geographically defined attendance areas for each school.

On August 1, 1969, the instant comprehensive plan was filed by the defendant Board. Objections to portions of the plan were raised by plaintiffs, and evidence was submitted as to the merits of the plan.

## I. PROVISIONS OF PLAN

1. The plan under consideration is a comprehensive plan designed to remove any remaining vestiges of the old dual system of schools in the District. It provides for the assignment of students in every school on the basis of geographical attendance areas, the boundary lines of which are drawn fairly with regard to race. It provides that for the year 1969–70 all faculties shall have teachers of both races, with a ratio of 50% white to 50% black in the schools where black students are in the majority and 90% white and 10% black in all schools where white students are in the majority; that for the school year 1970–71 and thereafter the ratio shall be approximately 82% white and 18% black throughout, which is the estimated ratio among students as to race. It is necessary to obtain this latter composition by two year stages because of a shortage of teachers. By this arrangement there will no longer be any "all black" schools in the District.

2 The defendant will freely grant the privilege to any student to transfer from a school where his race is in the majority to a school where his race is in the minority.

3. Likewise the plan provides that in Senior and Junior High Schools, any

student who requires a course of study not offered in his attendance area may be permitted, upon application, to transfer to another school in the County which offers the needed course.

4. Furthermore, any student in any school who is physically handicapped may be permitted, upon application, to transfer to another school outside his attendance area where the facts justify it.

5. In the elementary schools, applications for transfer of students to another attendance area may be granted where it is shown to be necessary to keep the child or children in school and denial of the applications would leave them unattended after school hours.

6. In addition, the plan provides that transfers will be allowed if ordered by the Juvenile Court or State or Federal agencies for the welfare of the child.

7. In the plan it is provided that in the case of two elementary schools in Tampa located very close to each other, Macfarlane and Cuesta, which actually have the same school principal, a pairing arrangement will be in effect, with grades 1 to 3 at Macfarlane and 4 to 6 at Cuesta.

8. In the City of Plant City, the plan provides for the use of Marshall School for an area-wide seventh grade; Tomlin Junior High will serve all eighth and ninth grades in the area; and Plant City High School, all tenth, eleventh and twelfth grades in the area. A new senior high school is being built in the area which, when completed, will permit the changing of Plant City High, Pinecrest and Turkey Creek High Schools to junior high schools, and Tomlin will be closed. The Board will seek approval of attendance zones for these schools when the new building is completed.

9. All of the high schools, junior high schools and elementary schools will have attendance areas for each school based upon geographical zone lines.

10. The plan further provided that for the year 1969–70 all students in the sixth, ninth and twelfth grades may, on application, be permitted to remain in

the school attended in the 1968–69 school year.

## II. OBJECTIONS TO THE PLAN

### 1. HIGH SCHOOLS.

Plaintiffs objected to the area zones for Blake, Middleton and Hillsborough High Schools in Tampa, claiming that although all now will have racially mixed student bodies and faculties, the zone lines would produce more integration if drawn differently.

### 2. JUNIOR HIGH SCHOOLS.

Objections were made to three Junior High Schools as zoned under the plan, Booker T. Washington, Just, and Young. It is estimated that in the coming year there will be no white students living in the area of Booker T. Washington Junior High, hence no white students will be enrolled there. This school is located in the heart of the Negro area of the city. As to Just and Young Junior High Schools, each of them will have a number of white students but, if the lines were drawn differently, more white students would be attending these predominately Negro schools which are also located in the Negro section.

### 3. ELEMENTARY SCHOOLS.

Out of eighty-eight elementary schools under the plan, plaintiffs contend that seven of them, Henderson, Carver, Potter, Meacham, Shore, Roland Park and Dunbar, will be expected to have no white students. Objections were also made to the zone lines for Williams, College Hill, Ybor, Lomax, Lincoln, Jackson Heights and Progress Village.

### 4. FACULTY.

Plaintiffs appear to have no objection to the percentage of teachers and each race for the various schools, as provided in the plan, but complain that the manner of selection of teachers to each school by the Board was improper. This is based upon a subsequently revoked order of the Board which related to Negro teachers only.

## III. FINDINGS OF FACT

The Court, having considered the pleadings, evidence submitted, and briefs of the parties, now finds that

1. The zone lines for each of the schools in the District were fairly drawn by defendant so as to promote further integration by any means that are available and feasible.

2. Although a few schools in the Tampa area are completely or predominantly black as to student composition, this is only the result of neighborhood housing patterns and not designed by the Board. In the main Negro section of Tampa where most of these schools are located there is being constructed a Federally financed "Model Cities Program", which contemplates consolidation and elimination of old schools and the construction of new ones on the edge of the area so as to serve a wider coverage of the public without bussing of children great distances. Consideration was given to pairing of these schools, but the evidence showed it would not materially change the racial composition of them and would not be feasible or justified until the plans of the "Model Cities Program" are further developed and disclosed.

3. The Court finds further that the plan to permit students in the sixth, ninth and twelfth grades to remain in their old schools for one year without regard to their zoning assignments under the plan is unfair and unnecessary and should be disapproved.

4. The faculty make-up of each school is designed to and will eliminate any claim of racial unfairness in this regard.

5. With the faculty changes and the neighborhood school areas determining the complexion of the student bodies, the Board has discharged its Constitutional duty as set out in the decisions of the higher courts. It has considered the problems involved with each school and has completely eliminated any dual system of schools so that there are now no "white schools" or "Negro schools", but

just "schools" open to every child in the neighborhood.

It is therefore

ORDERED and DECREED:

1. That the Revised Plan submitted by the defendant Board on August 1, 1969, is approved and adopted by this Court, except that provision which permits students in the sixth, ninth and twelfth grades to continue in the schools they attended last year, regardless of the zoning plan. This provision, which was objected to by plaintiffs, is not approved or adopted.

2. That this Order is effective as of this date, and the defendant Board is ordered and directed to put the said Revised Plan, as herein approved, into operation forthwith for the conduct of its school system for the school year 1969–1970.

3. That the Court retains jurisdiction of this cause for the entering of such further orders as may be necessary or advisable in the administration or enforcement of this Order.